**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MELANIE NEWMAN,
individually and on behalf of all others similarly
situated,

        Plaintiff,

        v.

AMERICAN MULTI-CINEMA, INC. d/b/a AMC
THEATERS,

        Defendant.

Case No.: _____

**<u>COMPLAINT – CLASS ACTION</u>**

**JURY TRIAL DEMAND**

Plaintiff Melanie Newman ("Plaintiff") brings this Class Action Complaint ("Complaint")
against American Multi-Cinema, Inc. d/b/a AMC Theaters ("AMC" or "Defendant"), as an
individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as
to her own actions and her counsels' investigation, and upon information and belief as to all other
matters, as follows:

## INTRODUCTION

1.    Plaintiff brings this Complaint against AMC for its failure to properly secure and
safeguard the personally identifiable information that it collected and maintained as part of its
regular business practices, including, but not limited to: full names; dates of birth; Social Security
numbers; (collectively, "personally identifiable information" or "PII") and medical and health
insurance information, which is protected health information ("PHI", and collectively with PII,
"Private Information").

2.    Defendant is one of the largest movie theater operators in the United States.

3. Plaintiff's and Class Members' sensitive personal information—which they entrusted to Defendant on the mutual understanding that Defendant would protect it against disclosure—was compromised and unlawfully accessed due to the Data Breach.

4. AMC collected and maintained certain personally identifiable information of Plaintiff and the putative Class Members (defined below), who are (or were) employees at AMC.

5. The Private Information compromised in the Data Breach was exfiltrated by cyber-criminals and remains in the hands of those cyber-criminals who target Private Information for its value to identity thieves.

6. As a result of the Data Breach, Plaintiff and tens of thousands of Class Members, suffered concrete injury in fact including, but not limited to: (i) Plaintiff losing access to her financial accounts and/or credit cards; (ii) lost or diminished value of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) invasion of privacy; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

7. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect its employees' Private Information from a foreseeable and preventable cyber-attack.

8. Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition

vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

9.      Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures and ensure those measures were followed by its IT vendors to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

10.      Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct because the Private Information that Defendant collected and maintained is now in the hands of data thieves.

11.      Armed with the Private Information accessed in the Data Breach, data thieves have already engaged in identity theft and fraud and can in the future commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class

Members' names but with another person's photograph, and giving false information to police during an arrest.

12.    As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

13.    Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

14.    Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access by an unknown third party and precisely what specific type of information was accessed.

15.    Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

16.    Plaintiff seeks remedies including, but not limited to, compensatory damages and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

17.    Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct.

**PARTIES**

18.     Plaintiff Newman is and has been at all relevant times a resident and citizen of Palm Bay, Florida. Ms. Newman received the Notice Letter, via U.S. mail, directly from Defendant, dated July 13, 2023. If Ms. Newman had known that Defendant would not adequately protect her Private Information, she would not have provided her Private Information to Defendant or allowed Defendant to maintain this sensitive Private Information.

19.     Defendant is a corporation formed under the state laws of Missouri with its principal place of business located at 11500 Ash Street, Leawood, Kansas 66211.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including Plaintiff, is a citizen of a state different from Defendant.

21.      This Court has personal jurisdiction over Defendant because its principal place of business is in this District, regularly conducts business in Kansas, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

22.     Venue is proper under 18 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

## FACTUAL ALLEGATIONS

### Background

23.     Defendant is one of the largest movie theater operators in the United States.

24.     Plaintiff and Class Members are current and former AMC employees.

25.    The information held by Defendant in its computer systems or those of its vendors at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

26.    Upon information and belief, in the course of collecting Private Information from employees, including Plaintiff, Defendant promised to provide confidentiality and adequate security for employee data through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

27.    Indeed, Defendant's Privacy Policy provides that: "[w]e have implemented and maintain commercially reasonable security measures designed to protect your Personally Identifiable Information from unauthorized access, disclosure, use, and modification."[1]

28.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

29.    Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

30.    Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties and to

---

[1] https://www.amctheatres.com/privacy-policy (last visited Aug. 10, 2023).

audit, monitor, and verify the integrity of its IT vendors and affiliates. Defendant has a legal duty to keep employees' Private Information safe and confidential.

31.    Defendant had obligations created by FTC Act, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

32.    Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform the services it provides.

33.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

### *The Data Breach*

34.    On or about July 13, 2023, Defendant began sending Plaintiff and other Data Breach victims a Notice of Data Breach letter (the "Notice Letter"), informing them that:

**What Happened?**
As has been the case with many organizations recently, AMC was a victim of a cybersecurity incident involving the MOVEit file-transfer application. On June 1, AMC IT personnel learned of the MOVEit vulnerability and immediately took steps to disconnect the affected network asset and remediate. We also reached out for help from outside cybersecurity experts, who undertook an investigation of the incident. Based on that investigation, we believe the incident lasted from May 28 to June 1, 2023. Once we identified that data that may have been affected, we promptly engaged a data-review firm to determine what information was in those files. We received the results of that review on June 23. We have been working since this to identify the affected individuals and the correct addresses for them. This notice was not delayed as a result of a law-enforcement investigation.

**What Information Was Involved?**

Our investigation determined that the following types of personal information related to you may have been impacted: name, date of birth, Social Security number, and medical information.[2]

35.     Omitted from the Notice Letter were the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

36.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

37.     As a result of Defendant's failure to audit, monitor and verify the integrity of its IT vendors, the attacker accessed and acquired files containing unencrypted Private Information of Plaintiff and Class Members. Plaintiff's and Class Members' Private Information was accessed and stolen in the Data Breach.

38.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed. Moreover, Defendant failed to exercise due diligence in selecting its IT vendors or deciding with whom it would share sensitive Private Information.

---

[2] The "Notice Letter". A sample copy is available at
https://oag.ca.gov/ecrime/databreach/reports/sb24-570230 (last visited Aug. 10, 2023).

39.     The attacker accessed and acquired files Defendant shared with a third party containing unencrypted Private Information of Plaintiff and Class Members, including their Social Security numbers, PHI, and other sensitive information. Plaintiff's and Class Members' Private Information was accessed and stolen in the Data Breach.

40.     Plaintiff further believes her Private Information and that of Class Members was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

### *Defendant Acquires, Collects, Stores, and Shares Employees' Private Information*

41.     Defendant has historically acquired, collected, stored, and shared the Private Information of Plaintiff and Class Members.

42.     As a condition of employment, or as a condition of receiving certain benefits, Defendant requires that employees, former employees, and other personnel entrust it with highly sensitive personal information.

43.     By obtaining, collecting, sharing, and using Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

44.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

45.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class Members or by exercising due diligence in selecting its IT vendors and properly auditing those vendor's security practices.

46.

47.     Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

48.     Indeed, Defendant's Privacy Policy provides that: "[w]e have implemented and maintain commercially reasonable security measures designed to protect your Personally Identifiable Information from unauthorized access, disclosure, use, and modification."[3]

49.     Plaintiff and the Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### Defendant Knew or Should Have Known of the Risk because Employers in Possession of Private Information are Particularly Susceptible to Cyber Attacks

50.     Defendant's data security obligations, including its obligation to verify the integrity of its vendors' networks, were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting entities that collect and store Private Information, like Defendant, preceding the date of the breach.

51.     Data breaches, including those perpetrated against employers that store Private Information in their systems, have become widespread.

52.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.

53.     Indeed, cyber-attacks, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a

---

[3] https://www.amctheatres.com/privacy-policy (last visited Aug. 10, 2023).

warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store Private Information are "attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to regain access to their data quickly."

54.    In light of recent high profile data breaches at industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the Private Information that they collected and maintained would be targeted by cybercriminals.

55.    Defendant knew and understood that unprotected or exposed Private Information in the custody of employers, like Defendant, is valuable and highly sought after by nefarious third parties seeking to illegally monetize that Private Information through unauthorized access.

56.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendant's data security system, or those of its IT vendors, was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

57.    Additionally, as companies became more dependent on computer systems to run their business,[4] *e.g.*, working remotely as a result of the Covid-19 pandemic, and the Internet of

---

[4] https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html

Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[5]

58.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

59.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

60.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen—particularly Social Security numbers and PHI—fraudulent use of that information and damage to victims may continue for years.

61.    As a business in custody of current and former employees' Private Information, Defendant knew, or should have known, the importance of safeguarding Private Information entrusted to them by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems, or those of its vendors, were breached. This includes the significant costs imposed on Plaintiff and Class Members as a result of a breach. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

### *Value of Personally Identifiable Information*

62.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity

---

[5] https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022

credentials.[6] For example, Personal Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[7] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[8]

63.    Social Security numbers, which were compromised for some of the Class Members as alleged herein, for example, are among the worst kind of Private Information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use It to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down      for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[9]

64.    What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of

---

[6] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Oct. 17, 2022).
[7] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Oct. 17, 2022).

[8] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Oct. 217, 2022).
[9] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Oct. 17, 2022).

misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

65.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[10]

66.     Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."

67.     According to account monitoring company LogDog, medical data sells for $50 and up on the Dark Web.[11]

68.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, PHI, name, and date of birth.

69.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information,

---

[10] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Oct. 17, 2022).

[11] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (last accessed July 20, 2021)

personally identifiable information and Social Security numbers are worth more than 10x on the black market."[12]

70.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

71.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[13]

### Defendant Fails to Comply with FTC Guidelines

72.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

73.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal employee information that they keep; properly dispose

---

[12] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Oct. 17, 2022).

[13] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited Oct. 17, 2022).

of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

74.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

75.     The FTC has brought enforcement actions against employers for failing to protect employee data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

76.     These FTC enforcement actions include actions against employers over the compromised Private Information of its employees, like Defendant here.

77.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its vendor's data security practices. Defendant's failure to employ reasonable and appropriate measures to protect

against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

78.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

79.     Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of its employees and to ensure that networks on which Defendant shared Private Information were reasonably secure against unauthorized access. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### *Defendant Fails to Comply with Industry Standards*

80.     As noted above, experts studying cyber security routinely identify entities in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

81.     Several best practices have been identified that a minimum should be implemented by employers in possession of Private Information, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

82.     Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls,

switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

83.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

84.    These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its employees. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

***Defendant's Breach***

85.    Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because Defendant failed to ensure that the information it shared with its affiliates was properly encrypted while in transit and that its partners used data security practices appropriate to the nature of information being shared on their computer systems and network. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

      a.    Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

      b.    Failing to adequately protect Private Information;

c.   Failing to ensure that their vendors with access to their computer systems and data employed reasonable security procedures;

d.   Failing to ensure the confidentiality and integrity of electronic Private Information it created, received, maintained, and/or transmitted;

e.   Failing to implement technical policies and procedures for electronic information systems that maintain electronic Private Information to allow access only to those persons or software programs that have been granted access rights;

f.   Failing to implement policies and procedures to prevent, detect, contain, and correct security violations;

g.   Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports;

h.   Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic Private Information;

i.   Failing to train all members of their workforces effectively on the policies and procedures regarding Private Information;

j.   Failing to render the electronic Private Information it maintained unusable, unreadable, or indecipherable to unauthorized individuals;

k.   Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

l.   Failing to adhere to industry standards for cybersecurity as discussed above; and,

m.   Otherwise breaching their duties and obligations to protect Plaintiff's and Class Members' Private Information.

86.    Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access Defendant's online insurance application flow, which provided unauthorized actors with unsecured and unencrypted Private Information.

87.    Had Defendant remedied the deficiencies in its information storage and security systems or those of its vendors and affiliates, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

88.    Accordingly, as outlined below, Plaintiff and Class Members now face a present, increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members lost the benefit of the bargain they made with Defendant.

**COMMON INJURIES AND DAMAGES**

89.    As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their Private Information; and (e) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

***The Data Breach Increases Plaintiff's and Class Member's Risk of Identity Theft***

90.    The unencrypted Private Information of Plaintiff and Class Members will end up for sale on the dark web as that is the *modus operandi* of hackers. In addition, unencrypted Private Information may fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Private Information of Plaintiff and Class Members.

91.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

92.    Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity--or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

93.    For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data Breaches can be the starting point for these additional targeted attacks on the victims.

94.    One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[14]

95.    With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

96.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

---

[14] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-finn/ (last visited on May 26, 2023).

97.     The existence and prevalence of "Fullz" packages means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like phone numbers and emails) of Plaintiff and the other Class Members.

98.     Thus, even if certain information (such as emails or telephone numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

99.     Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

**_Loss of Time to Mitigate the Risk of Identity Theft and Fraud_**

100.     As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet, the resource and asset of time has been lost.

101.     Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must, as Defendant's Notice Letter instructs them,[15] "remain vigilant" and monitor their financial accounts for many years to mitigate the risk of identity theft and fraud.

102.     Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords, resecuring their own computer networks, and contacting financial institutions to regain access to their accounts and/or credit cards.

---

[15] Notice Letter.

103.    Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[16]

104.    Plaintiff's mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

### Diminution of Value of Private Information

105.    PII and PHI are valuable property rights.[17] Their value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

106.    Sensitive PII can sell for as much as $363 per record according to the Infosec Institute.[18]

---

[16] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[17] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[18] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited Sep. 13, 2022).

107.    An active and robust legitimate marketplace for PII exists. In 2019, the data brokering industry was worth roughly $200 billion.[19]

108.    In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[20,21] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[22]

109.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

110.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change, e.g., Social Security numbers, PHI, dates of birth, and names.

111.    The fraudulent activity resulting from the Data Breach may not come to light for years.

---

[19] https://www.latimes.com/business/story/2019-11-05/column-data-brokers
[20] https://datacoup.com/
[21] https://digi.me/what-is-digime/
[22] Nielsen Computer & Mobile Panel, Frequently Asked Questions, available at https://computermobilepanel.nielsen.com/ui/US/en/faqen.html

112.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

113.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

114.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to potentially thousands of individuals' detailed personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

115.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

***Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary***

116.    Given the type of targeted attack in this case and sophisticated criminal activity, and the type of Private Information involved in this Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes –*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

117.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that her or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

118.    Furthermore, the information accessed and disseminated in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, where victims can easily cancel or close credit and debit card accounts.[23] The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

119.    Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

120.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

*Loss of Benefit of the Bargain*

121.    Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When accepting employment from Defendant under certain terms, Plaintiff and other reasonable employees understood and expected that they were, in part, paying,

---

[23] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, FORBES (Mar. 25, 2020), https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1.

or being paid less, for services and data security to protect the Private Information, when in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received employment positions that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

### *Plaintiff Newman's Experience*

122.    Plaintiff Newman was employed at AMC from approximately 2021 to 2022.

123.    As a condition of her employment at AMC, she was required to provide her Private Information to Defendant.

124.    At the time of the Data Breach—approximately May 28, 2023 through June 1, 2023— Defendant retained Plaintiff's Private Information in its system, despite the fact that Plaintiff is no longer employed at AMC.

125.    Plaintiff Newman is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

126.    Plaintiff Newman received the Notice Letter, by U.S. mail, directly from Defendant, dated July 13, 2023. According to the Notice Letter, Plaintiff's Private Information was improperly accessed and obtained by unauthorized third parties. This sensitive information included Plaintiff's name, date of birth, Social Security number, and medical information.

127.    As a result of the Data Breach, and at the direction of Defendant's Notice Letter, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: changing passwords, resecuring her own computer network, and contacting financial institutions to regain access to her accounts and/or credit cards. Plaintiff has spent significant time

dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

128.    Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) lost or diminished value of her Private Information; (ii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iii) invasion of privacy; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

129.    Plaintiff further suffered actual injury in the form of losing access to her financial accounts and/or credit cards, which, upon information and belief, was caused by the Data Breach.

130.    Plaintiff further suffered actual injury in the form of experiencing an increase in spam calls, texts, and/or emails, which, upon information and belief, was caused by the Data Breach.

131.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed him of key details about the Data Breach's occurrence.

132.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a

result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

133.    Plaintiff Newman has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

134.    This action is properly maintainable as a class action. Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated.

135.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All individuals residing in the United States whose Private Information was compromised in the data breach first announced by Defendant in July 2023 (the "Class").

136.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

137.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. Although the precise number of persons impacted by the Data Breach is currently unknown to Plaintiff, the Class includes thousands of individuals, upon information and belief. The Class is apparently identifiable within Defendant's records, and Defendant has already identified these individuals (as evidenced by sending them breach notification letters).

138.    Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting solely individual members of the Class. The questions of law and fact common to the Class, which may affect individual Class members, include, but are not limited to, the following:

a.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

b.    Whether Defendant had respective duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

c.    Whether Defendant had respective duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

d.    Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

e.    Whether Defendant adequately audited, monitored, and verified the integrity of its vendors' data security practices and computer networks;

f.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g.    Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

h.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.    Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

> j.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct; and
>
> k.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

139.  <u>Typicality</u>: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

140.  <u>Policies Generally Applicable to the Class:</u> This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Nationwide Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

141.  <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages she has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

142.  <u>Superiority and Manageability:</u> The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other

available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

143.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

144.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

145.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

146.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

147.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Code of Civil Procedure § 382.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

148.    Plaintiff repeats and re-alleges each and every preceding allegation, as it fully set forth herein.

149.    Defendant required Plaintiff and Class Members to submit non-public Private Information as a condition of employment or as a condition of receiving employee benefits

150.    Plaintiff and the Class Members entrusted their Private Information to Defendant with the understanding that Defendant would safeguard their information and delete it once the employment relationship terminated.

151.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to exercise due diligence in selecting IT

vendors and to audit, monitor, and ensure the integrity of its vendor's systems and practices and to give prompt notice to those affected in the case of a data breach.

152.    Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

153.    Section 5 of the FTC Act, as interpreted and enforced by the FTC, prohibits the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's sensitive Private Information.

154.    Plaintiff and members of the Class are within the class of persons that the FTC Act and HIPAA intended to protect.

155.    The harm that occurred as a result of the Data Breach is the type of harm that the FTC Act and similar statutes are intended to guard against. The FTC has pursued enforcement actions against employers, which, as a result of failures to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm to its employees as that suffered by Plaintiff and members of the Class.

156.    Defendant's conduct constitutes negligence because it was in violation of Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards.

157.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored, and the foreseeable consequences of the Data Breach

for companies of Defendant's magnitude, including, specifically, the immense damages that would result to Plaintiff and Members of the Class due to the valuable nature of the Private Information at issue in this case—including Social Security numbers.

158.   Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

159.   Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.   Failing to adequately monitor the security of their networks and systems;

    c.   Failing to audit, monitor, or ensure the integrity of its vendor's data security practices;

    d.   Allowing unauthorized access to Class Members' Private Information;

    e.   Failing to detect in a timely manner that Class Members' Private Information had been compromised;

    f.   Failing to remove former employees' Private Information it was no longer required to retain pursuant to regulations,

    g.   Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

h.   Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

160.   It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the food retailer industry.

161.   It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

162.   There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the Private Information and the harm suffered, or risk of imminent harm suffered by Plaintiff and the Class.

163.   As a result of Defendant's negligence, Plaintiff and the Class Members have suffered and will continue to suffer damages and injury including, but not limited to: (i) Plaintiff losing access to her financial accounts and/or credit cards; (ii) lost or diminished value of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) invasion of privacy; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

164.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

165.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

### COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

166.    Plaintiff repeats and re-alleges each and every preceding allegation, as it fully set forth herein.

167.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies, such as Defendant, of failing to use reasonable measures to protect Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

168.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

169.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se.*

170.    Class Members are consumers within the class of persons that Section 5 of the FTC Act is intended to protect.

171.    Moreover, the harm that has occurred is the type of harm that the FTC Act is intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

172.   But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

173.   There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

174.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) Plaintiff losing access to her financial accounts and/or credit cards; (ii) lost or diminished value of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) invasion of privacy; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

175.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

176.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

177.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

178.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and insecure manner.

179.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## <u>COUNT III</u>
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

180.    Plaintiff repeats and re-alleges each and every preceding allegation, as it fully set forth herein.

181.    Plaintiff brings this claim for unjust enrichment in the alternative to Count IV (breach of implied contract).

182.    Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of their labor and by providing their valuable Private Information to Defendant.

183.    Plaintiff and Class Members provided Defendant their labor and Private Information on the understanding that Defendant would pay for the administrative costs of

reasonable data privacy and security practices and procedures from the revenue it derived therefrom. In exchange, Plaintiff and Class Members should have received adequate protection and data security for such Private Information held by Defendant.

184.    Defendant benefited from receiving Plaintiff's and Class Members' labor and from receiving their Private Information through its ability to retain and use that information for its own benefit. Defendant understood and accepted this benefit.

185.    Defendant knew Plaintiff and Class members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

186.    Because all Private Information provided by Plaintiff and Class Members was similarly at risk from a foreseeable and targeted data breach, Defendant's obligation to safeguard the Private Information it collected from its employees was inherent to the employment relationship.

187.    Defendant also understood and appreciated that Plaintiff's and Class Members' Private Information was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

188.    Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members.

189.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff' and Class Members' Private Information.

190.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead made calculated decisions to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures.

Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

191.    Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

192.    Defendant's enrichment at the expense of Plaintiff and Class Members is and was unjust.

193.    Defendant acquired the monetary benefit and Private Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

194.    If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

195.    Plaintiff and Class Members have no adequate remedy at law.

196.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury as described herein.

197.    Plaintiff and the Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

**COUNT IV**
**Breach Of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

198.    Plaintiff repeats and re-alleges each and every preceding allegation, as it fully set forth herein.

199.    This count is pleaded in the alternative to Count III (Unjust Enrichment) above.

200.    Plaintiff and Class Members were required to provide their Private Information to Defendant as a condition of their employment with Defendant.

201.    Plaintiff and Class Members provided their labor and their Private Information to Defendant in exchange for (among other things) Defendant's promise to protect their Private Information from unauthorized disclosure and to delete it once it was no longer necessary to maintain the Private Information for employment purposes.

202.    Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

203.    On information and belief, Defendant further promised to and represented it would comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

204.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

205.    When Plaintiff and Class Members provided their Private Information to Defendant as a condition of their employment or employee beneficiary status, they entered into implied

contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

206.    Defendant required Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

207.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

208.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

209.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

210.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

211.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

212.    As a direct and proximate result of Defendant's breaches of the implied contracts, Class Members sustained damages as alleged herein.

213.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

214.    Plaintiff and Class Members are also entitled to nominal damages for the breach of implied contract.

215.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class, as defined herein, and appointing Plaintiff and her Counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

  i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

  ii.    requiring Defendant to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.  requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v.  prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi.  requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.  requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.  requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.  requiring Defendant to conduct regular database scanning and securing checks;

xi.  requiring Defendant to establish an information security training program that

includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.  requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.  requiring Defendant to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.  requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.  requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xvii.   for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.   For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.   For prejudgment interest on all amounts awarded; and

G.   Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Date: August 17, 2023

Respectfully Submitted,

_/s/   Maureen M. Brady_
Maureen M. Brady    KS# 22460
Lucy McShane       KS# 22517
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Phone:  (816) 888-8010
Fax:  (816) 332-6295
E-mail:  mbrady@mcshanebradylaw.com
          lmcshane@mcshanebradylaw.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON**

**PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

*Attorney for Plaintiff and the Putative Class*

*\*Pro Hac Vice* application forthcoming